# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Ashley T. Adams, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Integrity Staffing, aka | ) | |
| Pepper Hamilton, LLP, | ) | |
| Dawn Harper, et al., | ) | Civil Action No. 05-249-KAJ |
| | ) | |
| Randstad Staffing Services, | ) | |
| Woman of India nationality, et al., | ) | |
| | ) | |
| JP Morgan Chase Bank One, | ) | |
| Cheryl Denneny, et al., | ) | |
| | ) | |
| Ernest & Young, | ) | |
| Scott Gallagher, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT ERNST & YOUNG, LLP'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Jennifer C. Jauffret (#3689)
jauffret@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
Counsel for defendant Ernst & Young, LLP

Dated: June 30, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

N ATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

SUMMARY OF THE ARGUMENT ....................................................................................... 3

STATEMENT OF THE FACTS ............................................................................................... 4

ARGUMENT ............................................................................................................................ 7

   I.    STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS ................................... 7

   II.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS TO ERNST & YOUNG
       BECAUSE PLAINTIFF HAS FAILED TO EXHAUST THE REQUIRED
       ADMINISTRATIVE REMEDIES ............................................................................... 9

CONCLUSION ...................................................................................................................... 12

## TABLE OF AUTHORITIES

### CASES

In re Burlington Coat Factory Sec. Litig.,
   114 F.3d 1410 (3d Cir. 1997) ........................................................... 8

Conley v. Gibson,
   355 U.S. 41 (1957) ........................................................................ 7

Cortec Indus., Inc. v. Sum Holding L.P.,
   949 F.2d 42 (2d Cir. 1991) ............................................................. 8

Fullman v. Philadelphia Int'l Airport,
   49 F. Supp. 2d 434 (E.D. Pa. 1999) ................................................. 9

Glus v. G.C. Murphy Co.,
   562 F.2d 880 (3d Cir. 1977) ........................................................... 9

Hishon v. King & Spalding,
   467 U.S. 69 (1984) ........................................................................ 7

Kellam v. Snelling Personnel Servs.,
   866 F. Supp. 812 (D. Del. 1994), aff'd, 65 F.3d 162 (3d Cir. 1995) ......... 2

Knott-Ellis v. Delaware Dep't of Correction,
   2001 WL 935621 (D. Del. Aug. 3, 2001) ........................................... 1

LaFate v. Hospital Billing & Collections Serv., LTD.,
   2004 WL 1960218 (D. Del. Sept. 1, 2004) ......................................... 8

McDonnell Douglas Corp. v. Green,
   411 U.S. 792 (1973) ...................................................................... 9

Miree v. DeKalb County, GA.,
   433 U.S. 25 (1977) ........................................................................ 7

Oshiver v. Levin, Fishbein, Sedran & Berman,
   38 F.3d 1380 (3d Cir. 1994) ........................................................... 7

Reed v. Hewlett-Packard Co.,
   2001 WL 65725 (D. Del. Jan. 12, 2001) ......................................... 7, 8

Robinson v. Dalton,
   107 F.3d 1018 (3d Cir. 1997) ......................................................... 7

Sheridan v. E.I. DuPont de Nemours & Co.,
   100 F.3d 1061 (3d Cir. 1996) ......................................................... 1

ii

Wilson v. Dep't of Correction of Delaware,
    2001 WL 34368392 (D. Del. Mar. 30, 2001) ............................................ 2

Wright v. Pepsi Cola Co.,
    243 F. Supp. 2d 117 (D. Del. 2003) .............................................. 9, 10

## STATUTES AND OTHER AUTHORITIES

42 U.S.C. § 2000(e)-5(e), 5(f)(1) ...................................................... 9

42 U.S.C. § 2000(e)-5(f)(1) .......................................................... 9

42 U.S.C. § 2000e-2(a)(1) ........................................................... 2

Fed. R. Civ. P. 8(a)(2) ............................................................. 7

2 James Wm. Moore, Moore's Federal Practice § 10.05[4] (3d ed. 2004) ............... 7

## NATURE AND STAGE OF PROCEEDINGS

On April 28, 2005, plaintiff Ashley T. Adams ("Adams") filed a form complaint (the "Complaint") in the United States District Court for the District of Delaware (the "District of Delaware") against defendants Integrity Staffing ("Integrity"), Randstad Staffing Services ("Randstad"),[1] JP Morgan Chase Bank ("JP Morgan")[2] and Ernst & Young, LLP ("Ernst & Young")[3] (collectively, "Defendants"). Based on the Complaint's caption, it appears that Dawn Harper-Smith ("Harper-Smith")[4] Cheryl Denneny ("Denneny"), Scott Gallagher ("Gallagher"),[5] a "Woman of India nationality," and possibly other individuals (as indicated by Plaintiff's use of "et al.") have also been named as defendants. The Complaint was brought pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), for alleged employment discrimination. (See Complaint).

On March 26, 2005, defendant JP Morgan filed its answer. (See D.I. 6). That same day, defendant Denneny filed a motion to dismiss Plaintiff's Complaint on the grounds that there is no individual liability under Title VII. (See D.I. 7).

---

[1] Whose proper name is "Randstad North America, L.P." (See D.I. 22 at n. 2).

[2] Incorrectly identified in the Complaint as "JP Morgan Bank One."

[3] Incorrectly identified in the Complaint as "Ernest & Young."

[4] Incorrectly identified in the Complaint as "Harper." (See D.I. 15).

[5] Gallagher has yet to be served with the Complaint. (See D.I. 19). Upon Gallagher being served, counsel intends to represent Gallagher, an employee of Ernst & Young, in the litigation. At that time, counsel intends to file a motion to dismiss as done by Harper-Smith, Denneny and Randstad on behalf of a "Woman of India nationality," on the basis that there is no individual liability under Title VII. See Knott-Ellis v. Delaware Dep't of Correction, 2001 WL 935621, at *3 (D. Del. Aug. 3, 2001) (dismissing plaintiff's claims against individual defendants). See also Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996).

On June 20, 2005, defendant Integrity filed its answer. (See D.I. 14). That same day, Harper-Smith filed a motion to dismiss Plaintiff's Complaint on the grounds that there is no individual liability under Title VII. (See D.I. 15 and 16).

On June 23, 2005, defendants Randstad and a "Woman of India nationality" filed a motion to dismiss Plaintiff's Complaint on the grounds that there is no individual liability under Title VII as to a "Woman of India nationality," that Plaintiff failed to exhaust her administrative remedies as to Randstad, and that Randstad was not her employer. (See D.I. 21 and 22).

Defendant Ernst & Young now moves to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to exhaust her administrative remedies as to Ernst & Young.[6] This is Ernst & Young's opening brief in support of its motion.

---

[6] Title VII prohibits "employers," as defined by statute, from engaging in "prohibited employment practices." Kellam v. Snelling Personnel Servs., 866 F. Supp. 812, 813 (D. Del. 1994), aff'd, 65 F. 3d 162 (3d Cir. 1995)(TABLE). See also Wilson v. Dep't of Correction of Delaware, 2001 WL 34368392, at *2 (D. Del. Mar. 30, 2001) ("Title VII does not allow for suits against individuals. Title VII only allows for suits against employers based on unlawful employment practices."). In other words, Title VII prohibits an employer from discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Ernst & Young was not Plaintiff's employer, and thus Plaintiff does not have a cognizable claim under Title VII against Ernst & Young. In fact, Plaintiff does not allege Ernst & Young was her employer. (See Complaint at "Ernst & Young/Integrity Staffing" charge of discrimination attached thereto). Plaintiff merely worked at JP Morgan where certain Ernst & Young employees were also working. To the extent that the Court finds this argument persuasive at this stage, Ernst & Young joins in Randstad's motion to dismiss to the extent it also argues that it was not Plaintiff's employer.

2

## SUMMARY OF THE ARGUMENT

As to Ernst & Young, Plaintiff has failed to exhaust the necessary administrative proceedings prior to filing this case, and therefore the Complaint must be dismissed in its entirety as to Ernst & Young.

RLF1-2891374-1

## STATEMENT OF THE FACTS

Ernst & Young is a global organization that helps companies in businesses across all industries − from emerging growth companies to global powerhouses − deal with a broad range of business issues. Ernst & Young provides clients with a broad array of services relating to audit and risk-related services, tax and transactions.

In April 2003, Plaintiff began working for defendant Integrity, a temp agency. (Complaint at "Ernst & Young/Integrity Staffing" charge of discrimination attached thereto). Integrity sent Plaintiff to work at JP Morgan, located in Newark, Delaware, as an accountant. Id. (noting that Plaintiff was "an Accountant Team Leader at a Newark site"). (See also Complaint) (alleging that the discriminatory conduct occurred at JP Morgan). JP Morgan is a client of Ernst & Young, and at that time Ernst & Young had employees, including Gallagher, working at JP Morgan's Newark location on a project. Id.

On November 13, 2003, Integrity terminated Plaintiff. Id.

On February 15, 2005, the United States Equal Opportunity Commission (the "EEOC") issued a Right to Sue Letter in EEOC Charge No. 17C-2004-00275. In the Right to Sue Letter, the EEOC stated that it had "adopted the findings of the state or local fair employment practices agency that investigated this charge." (Complaint at Right to Sue Letter attached thereto) (emphasis added).

Plaintiff has attached three unsigned Delaware Department of Labor (the "DDOL") charges of discrimination to the Complaint (collectively, the "Charges"):

- The first charge names "Integrity" as respondent.

- The second charge names "JP Morgan/Integrity" as respondent.

- The third charge names "Ernst & Young/Integrity" as respondent.

(See Complaint at the three DDOL charges of discrimination attached thereto). All three Delaware state Charges requested that they be dual filed with the EEOC, but none were assigned an EEOC number such as the one referenced in the Right to Sue Letter. See id. Notably, none of the three Charges were signed or dated. As explained below, the third charge of discrimination (naming "Ernst & Young/Integrity") was never filed. (See Complaint at "Ernst & Young/Integrity Staffing" charge of discrimination attached thereto).

On April 28, 2005, Plaintiff filed the Complaint in the District of Delaware alleging employment discrimination pursuant to Title VII. (Complaint at ¶ 1).[7] Specifically, Plaintiff alleges she was discriminated against due to her race, color, national origin and gender, retaliated against, and subjected to a hostile work environment in violation of Title VII. Id. at ¶ 10. Nothing in the Complaint or Charges alleges that Ernst & Young was Plaintiff's employer. (See Complaint and the three DDOL charges of discrimination attached thereto).

Upon being served with the Complaint, because Ernst & Young had never been notified by or involved in an investigation by the DDOL or EEOC regarding the alleged matters, Ernst & Young contacted both the DDOL and the EEOC to confirm that Plaintiff had not filed a charge of discrimination against Ernst & Young. On May 13, 2005, Julie K. Cutler ("Cutler"), administrator at the Office of Labor Law Enforcement, Division of Industrial Affairs, DDOL, sent a letter to Peter J. Cahill ("Cahill") of Ernst & Young confirming that Plaintiff had not filed a charge of discrimination as to Ernst & Young with the DDOL. Cutler's letter stated: "Please be advised that the Charging Party [Plaintiff] in the above referenced matter did not file a charge of discrimination against Respondent [Ernst & Young]." (See Affidavit of Alyssa M. Schwartz

---

[7] The Complaint can be found at D.I. 2.

at Exhibit A) (emphasis added).[8]    Similarly, the EEOC has no records of a charge of discrimination being filed by Plaintiff against Ernst & Young.  On June 24, 2005, Jacqueline H. McNair ("McNair"), regional attorney for the EEOC, sent Cahill a letter stating: "No records fitting the description of the records you seek disclosed exist or could be located after a thorough search.   The EEOC charge number, 17C-2004-00275, is not against Ernst & Young." (See Affidavit of Alyssa M. Schwartz at Exhibit B) (emphasis added).

---

[8] The Affidavit of Alyssa M. Schwartz has been filed contemporaneously herewith.

## ARGUMENT

## I.    STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS.

A motion to dismiss a Title VII suit for failure to exhaust the EEOC process is properly

brought pursuant to Fed. R. Civ. P. 12(b)(6). Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir.

1997). See also Reed v. Hewlett-Packard Co., 2001 WL 65725, at *2 (D. Del. Jan. 12, 2001)

("[I]f a plaintiff has not exhausted administrative remedies before bringing suit, then a Rule

12(b)(6) motion is appropriate.").[9]  On a motion to dismiss pursuant Rule 12(b)(6), the court is

required to accept as true all allegations in the plaintiff's complaint, and all reasonable inferences

that can be drawn therefrom, and to view them in the light most favorable to the non-moving

party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).

The question is whether the claimant can prove any set of facts consistent with his

allegations that will entitle him to relief, not whether that person will ultimately prevail. See

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  While a court may accept well-pled

allegations as true for the purposes of the motion, it will not accept unsupported conclusions,

unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations. See

Miree v. DeKalb County, GA., 433 U.S. 25, 27, n.2 (1977).  Moreover, the claimant must set

forth sufficient information to outline the elements of his claims or to permit inferences to be

drawn that these elements exist. See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-

46 (1957).

A written instrument not formally attached to a pleading may be offered by a party in

support of a motion to dismiss the pleading without converting the same to a motion for

summary judgment. 2 James Wm. Moore, Moore's Federal Practice § 10.05[4] (3d ed. 2004).  A

---

[9] All unreported cases are attached alphabetically hereto at Exhibit 1.

7

court will consider such a written instrument when it is referred to in the pleading subject to the motion to dismiss, and if the writing is central to the pleader's claim for relief.  Id.  See also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (even though documents attached to motion to dismiss were neither exhibits to complaint nor incorporated by reference therein, court entitled to consider them because they were documents in plaintiffs' possession or about which plaintiffs had knowledge, and "they were integral to plaintiffs' claim"); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating an exception to the general rule that a district court ruling on a motion to dismiss may consider matters extraneous to the pleadings when a "document [is] integral to or explicitly relied upon in the complaint ... without converting the motion [to dismiss] into one for summary judgment") (emphasis in original).

The rationale underlying this rule is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.  For example, in Reed v. Hewlett-Packard Co., this Court was asked to determine whether any extrinsic documents could be properly considered in deciding the motion to dismiss a Title VII claim. 2001 WL 65725, at *2.  After noting the exception to the general rule, the Court held that the plaintiff's "Charge of Discrimination form is both integral to his complaint and a matter of public record.  Because a discrimination plaintiff cannot 'sustain a court claim without showing resort to the avenue of administrative relief,' this court will consider the Charge of Discrimination form."  Id.  See also LaFate v. Hospital Billing & Collections Serv., LTD., 2004 WL 1960218, at *1, n.1 (D. Del. Sept. 1, 2004).

Likewise, because Plaintiff cannot sustain her claim against Ernst & Young "without showing resort to the avenue of administrative relief," the Court should consider the letters of Culter and McNaire that challenge Plaintiff's allegations that all administrative avenues were exhausted as to Ernst & Young prior to filing the Complaint. The concern of lack of notice to Plaintiff is not present because Plaintiff is obviously well aware that the Charges and Right to Sue Letter that she attached to the Complaint did not involve charges of discrimination filed against Ernst & Young.

## II.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS TO ERNST & YOUNG BECAUSE PLAINTIFF HAS FAILED TO EXHAUST THE REQUIRED ADMINISTRATIVE REMEDIES.

As to Ernst & Young, Plaintiff has failed to exhaust her administrative remedies, and as such the Complaint must be dismissed in its entirety. Certain requirements must be met in order for a plaintiff to sustain a Title VII action. "As a prerequisite to a valid Title VII claim, a plaintiff must file a charge of discrimination with the EEOC and show that he has received a right to sue letter." Wright v. Pepsi Cola Co., 243 F. Supp. 2d 117, 122 (D. Del. 2003) (dismissing plaintiff's discrimination count of complaint for failure to show that he received a right to sue from the EEOC); see also 42 U.S.C. § 2000(e)-5(e), 5(f)(1); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973); Fullman v. Philadelphia Int'l Airport, 49 F. Supp. 2d 434, 442-43 (E.D. Pa. 1999). As the Third Circuit has explained, "[t]he purpose of requiring an aggrieved party to first resort to the EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977). If a plaintiff does not meet the requirements of filing a Title VII claim with the proper administrative agency and exhausting all administrative remedies, her Title VII claim cannot stand.

For example, in <u>Wright v. Pepsi Cola Co.</u>, defendants moved to dismiss plaintiff's Title VII claim because he failed to demonstrate in his complaint that he exhausted all of his administrative remedies.    <u>Wright</u>, 243 F. Supp. 2d at 120.    In particular, plaintiff did not demonstrate that he both filed a claim with the EEOC and received a Right to Sue Letter, which are necessary prerequisites to filing a valid Title VII claim.  <u>Id.</u>  Accordingly, this Court granted defendants' motion to dismiss, noting that as a prerequisite to initiating a cause of action in federal court, and specifically in the District of Delaware, a plaintiff <u>must</u> file a charge of discrimination with the EEOC and show that he has received a Right to Sue Letter against the defendants.  <u>Id.</u> at 122.  Because the plaintiff did not allege in his complaint that these steps were taken, the Court concluded that plaintiff's complaint could not survive a motion to dismiss.  <u>Id.</u>

Plaintiff, like the plaintiff in <u>Wright</u>, cannot demonstrate that she took the required administrative steps as to Ernst & Young prior to initiating this action in the District of Delaware.    Plaintiff has failed to file a charge of discrimination with the EEOC (or its state counterpart) against Ernst & Young and has not received a Right to Sue Letter corresponding to any such charge of discrimination.  Although Plaintiff attaches to her Complaint the February 15, 2005 Right to Sue Letter, according to both the DDOL and EEOC's records, it does not involve a charge of discrimination filed with the EEOC against Ernst & Young.  (<u>See</u> Complaint at Right to Sue Letter attached thereto).    Rather, the Right to Sue Letter involves a charge of discrimination filed against co-defendant JP Morgan.  <u>Id.</u>  The charge of discrimination against "Ernst & Young/Integrity" was unsigned and never filed.    In confirmation, the Right to Sue Letter states: "The EEOC has adopted the findings of the <u>state</u> or local <u>fair employment practices agency that investigated this charge</u>."  <u>Id.</u> (emphasis added).  The DDOL's letter from Cutler unequivocally confirmed that Plaintiff "<u>did not file a charge of discrimination against</u>

10

Respondent [Ernst & Young]" with the DDOL. (See Affidavit of Alyssa M. Schwartz at Exhibit A) (emphasis added). Therefore, the EEOC Right to Sue Letter only applies the charge of discrimination Plaintiff ultimately filed − which was not against Ernst & Young.

Likewise, the EEOC has specifically confirmed that the Right to Sue Letter is not in regard to a charge of discrimination filed against Ernst & Young. McNair's letter states: "The EEOC charge number, 17C-2004-00275 [referenced in the letter attached to Plaintiff's Complaint], is not against Ernst & Young." (See Affidavit of Alyssa M. Schwartz at Exhibit B) (emphasis added). Thus, as Plaintiff has not filed a charge of discrimination against Ernst & Young or received the requisite Right to Sue Letter, she has not met the administrative prerequisites for filing a federal employment discrimination action. Therefore, Plaintiff's Complaint must be dismissed in its entirety as to Ernst & Young.

## CONCLUSION

WHEREFORE, for the foregoing reasons, defendant Ernst & Young respectfully requests that the Court should grant Ernst & Young's motion and dismiss with prejudice Plaintiff's Complaint as to Ernst & Young.

Jennifer C. Jauffret (#3689)
jauffret@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
Counsel for defendant Ernst & Young, LLP

Dated: June 30, 2005

12

EXHIBIT 1



Not Reported in F.Supp.2d

2001 WL 935621 (D.Del.)

**(Cite as: 2001 WL 935621 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court, D. Delaware
Lt. Mary KNOTT-ELLIS, Plaintiff,
v.
DELAWARE DEPARTMENT OF
CORRECTION; Stanley Taylor, Commissioner;
Paul Howard,
Chief of Adult Prisons; Noreen Renard, Bureau
Chief; Phillip Morgan, PCCC; St /
Lt. Bruce Williamson; Lt. James Pietschmann and
Sgt. Wayne Wright, Defendants
**No. Civ.A. 00-826-SLR.**

Aug. 3, 2001

Lt. Mary Knott-Ellis, Newark, Delaware, Plaintiff,
pro se

Ophelia Michelle Waters, Deputy Attorney
General, Delaware Department of Justice,
Wilmington, Delaware, for Defendants

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Lieutenant Mary Knott-Ellis filed this
action on September 11, 2000 against defendants
Delaware Department of Correction ("DOC"),
Commissioner Stanley Taylor, Chief of Adult
Prisons Paul Howard, Bureau Chief Noreen Renard,
Warden Philip Morgan, St./Lt. Bruce Williamson,
Lt. James Pietschmann, and Sgt. Wayne Wright.
(D.I.2) Plaintiff alleges discrimination based on her
race and sex under Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000(e), et seq., ("Title VII").
The court has jurisdiction over plaintiff's claims

pursuant to 28 U.S.C. § 1331. Currently before the
court is defendants' motion to dismiss plaintiff's
complaint. (D.I.14) For the following reasons,
defendants' motion is granted.

II. BACKGROUND

Plaintiff, an African-American female, began
employment with the DOC in April 1983 as a
prison counselor. (D.I.18) In 1996, in connection
with a class action suit filed by female correctional
officers against the DOC, she was promoted to
Lieutenant Correctional Officer at the Plummer
Community Correctional Center ("PCCC") (D.I.16
at ¶ 2) On December 31, 1998, plaintiff and
defendant Sgt. Wright, plaintiff's subordinate,
became involved in an altercation over whether to
give an inmate a soda. (Id. at ¶ 3) There was no
witnesses to the incident, but plaintiff alleges that
Wright was verbally aggressive and physically
shook her. After an investigation by the DOC, Sgt.
Wright was issued a 10-day suspension and
transferred to the Gander Hill facility. [FN1] (Id.)
After the incident, plaintiff filed for worker's
compensation with the Delaware Department of
Labor ("DOL"), alleging that she sustained physical
and psychological injuries caused by her
confrontation with Sgt. Wright. (Id. at ¶ 4) Based
on a DOL assessment of "total disability," plaintiff
received over $2,000 in worker's compensation
from January 9, 1999 to February 17, 1999.
(D.I.18) In February 1999, the DOC sent plaintiff a
letter requesting that she receive psychological
treatment to verify that she was fit to return to duty.
(D.I.18) During a March 23, 1999 interview with
DOC officials concerning her confrontation with
Sgt. Wright, plaintiff stated that she was unable to
return to work. (Id.) On May 5, 1999, plaintiff filed
a charge of discrimination with the EEOC, alleging
gender discrimination, a hostile work environment
and retaliation over the incident with Sgt. Wright
and her promotion to Lieutenant. (D.I.18) The
EEOC dismissed plaintiff's claims and notified her

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F Supp 2d

2001 WL 935621 (D Del )

**(Cite as: 2001 WL 935621 (D.Del.))**

Page 2

of her right to sue (D I 2)

> FN1 Plaintiff also filed criminal charges
> against Sgt Wright, but the record does
> not indicate the result of those charges
> (D I 18) Plaintiff claims that her efforts to
> file the criminal charges were impeded by
> the DOC's refusal to release Sgt Wright's
> home address and date of birth from his
> confidential personnel records (*Id*)

In September 1999, pursuant to the
recommendation of plaintiff's physician, defendants
assigned plaintiff to a part-time, light duty position
at the Wilmington Probation and Parole Office
[FN2] (D I 15, Ex C) On her first day of work,
defendants claim that plaintiff appeared to be
heavily medicated and had difficulty following
instructions (D I 16 at ¶ 4) The next day, the
DOC's human resources director sent plaintiff a
letter stating that she was unable to perform "even
routine and non-demanding job tasks" and should
not return to work without medical documentation
that she was able to do so (D I 18) In a letter dated
January 13, 2000, plaintiff's psychiatrist informed
the DOC that plaintiff's "mental status has
regressed" and that "she is not ready to return to
work of any kind." (D I 15, Ex D) After additional
medical treatment, plaintiff was assigned to a prison
counselor position at the Gander Hill facility with
no loss of pay (D I 16 at ¶ 4) Plaintiff declined
the assignment, and instead applied for a disability
retirement pension, which she subsequently
received [FN3] (D I 16 at ¶ 5)

> FN2 At or around this time, plaintiff
> admitted to the DOC that an offender was
> residing at her home, in violation of DOC
> regulations (D I 18)

> FN3 This fact is based upon the
> representation by defendants' counsel that
> the DOC granted plaintiff's request for a
> disability pension (D I 15) Plaintiff also
> states that she was "forced into disability
> retirement " (D I 18) Neither party has
> provided exhibits that attest to this fact

*2 On May 30, 2000, plaintiff filed another charge
of discrimination with the EEOC, alleging
retaliation by defendants for her prior claims of
discrimination Plaintiff also alleged that defendants
falsely informed an employment agency that
plaintiff was on medical leave without pay from the
DOC, which prevented her from being hired by the
agency [FN4] (D I 18)

> FN4 There is no indication of the outcome
> of this EEOC complaint in the record

III STANDARD OF REVIEW

Because the parties have referred to matters outside
the pleadings, the court shall treat defendants'
motion to dismiss as a motion for summary
judgment *See* Fed R Civ P 12(b)(6) A court shall
grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to
judgment as a matter of law " Fed R Civ P 56(c)
The moving party bears the burden of proving that
no genuine issue of material fact exists *See
Matsushita Elec Indus Co v Zenith Radio Corp,*
475 U S 574, 586 n 10 (1986) "Facts that could
alter the outcome are 'material,' and disputes are
'genuine' if evidence exists from which a rational
person could conclude that the position of the
person with the burden of proof on the disputed
issue is correct " *Horowitz v Fed Kemper Life
Assurance Co,* 57 F 3d 300, 302 n 1 (3d Cir 1995)
(internal citations omitted) If the moving party has
demonstrated an absence of material fact, the
nonmoving party then "must come forward with
'specific facts showing that there is a genuine issue
for trial " ' *Matsushita,* 475 U S at 587 (quoting
Fed R Civ P 56(e)) The court will "view the
underlying facts and all reasonable inferences
therefrom in the light most favorable to the party
opposing the motion " *Pa Coal Ass'n v Babbitt,* 63
F 3d 231, 236 (3d Cir 1995) The mere existence of
some evidence in support of the nonmoving party,
however, will not be sufficient for denial of a
motion for summary judgment; there must be
enough evidence to enable a jury reasonably to find

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F Supp 2d

2001 WL 935621 (D Del.)

**(Cite as: 2001 WL 935621 (D.Del.))**

for the nonmoving party on that issue *See Anderson v. Liberty Lobby, Inc.*, 477 U S 242, 249 (1986) If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law *See Celotex Corp. v Catrett*, 477 U S 317, 322 (1986) With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff " *Revis v. Slocomb Indus.*, 814 F.Supp 1209, 1215 (D Del 1993) (*quoting Hankins v Temple Univ.*, 829 F 2d 437, 440 (3d Cir 1987))

IV DISCUSSION [FN5]

> FN5 Plaintiff filed a form complaint with the court, in which she alleged discrimination based on her race and sex by defendants' failure to employ her, failure to promote her, and "forc[ing] her into disability pension after 17 yrs of service " (D I 2) In her summary judgment brief, plaintiff makes additional allegations of discrimination, retaliation and a hostile work environment. (D I 18) Where the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner*, 404 U S 519, 520 (1972). Moreover, the parameters of the resulting civil complaint that may follow a notice of a right to sue from the EEOC are "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination " *Hicks v. ABT Assocs, Inc.*, 572 F 2d 960, 966 (3d Cir 1978). To the extent that plaintiff's May 5, 1999 EEOC charge of discrimination encompasses plaintiff's later allegations, the court will consider them in addition to those in her complaint The court, therefore, finds that plaintiff has alleged a disparate treatment

claim, hostile work environment claim, and retaliation claim under Title VII

**\*3** As a preliminary matter, Congress did not intend to hold individual employees liable under Title VII *See Sheridan v E I. DuPont de Nemours & Co.*, 100 F 3d 1061, 1078 (3d Cir 1996) Thus, plaintiff's claims against the individual defendants are dismissed

In her remaining claims against the DOC, plaintiff alleges that she was subject to discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. [FN6] Claims brought pursuant to Title VII are analyzed under a burden-shifting framework; if plaintiff makes a prima facie showing of discrimination or retaliation, the burden shifts to defendants to establish a legitimate, nondiscriminatory reason for their actions. *See McDonnell Douglas Corp v Green*, 411 U S 792, 802 (1973) If defendants carry this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendants' proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated *Sheridan v E I. DuPont de Nemours & Co.*, 100 F 3d 1061, 1072 (3d Cir 1996) (en banc) In the case at bar, the court need not engage in an extensive burden shifting analysis because plaintiff has not presented facts sufficient to state a prima facie case on any of her Title VII claims

> FN6 The anti-discrimination provision of Title VII provides:
> It shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee,

© 2005 Thomson/West No Claim to Orig U S Govt Works

because of such individual's race, color, religion, sex, or national origin
42 U S C § 2000e-2(a)
The anti-retaliation section of Title VII provides:
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment    because he has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter 42 U S C § 2000e -3a

A  Disparate Treatment Claim

Generally, to state a disparate treatment in employment claim under Title VII, a plaintiff must offer evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the act " *EEOC v Metal Serv Co*, 892 F 2d 341, 348 (3d Cir 1990) First, plaintiff must state a prima facie case of race or gender discrimination *See McDonnell Douglas*, 411 U S at 802 She can do so by showing by a preponderance of the evidence that: (1) she is a member of the protected class; (2) she suffered an adverse employment action; and (3) similarly situated members of the opposite sex were treated more favorably *See id*

In the present action, plaintiff fails to establish a prima facie case    Although plaintiff, an African-American female, is a member of a protected class, she has failed to demonstrate that she suffered an "adverse employment action " The Supreme Court has defined an "adverse employment action" as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change of benefits " *Burlington Indus Inc v Ellerth*, 524 U S 742, 749 (1998) Although the DOC reassigned plaintiff to different positions after she returned from disability leave, the reassignments occurred without loss of pay or

benefits, and were made to accommodate plaintiff's medical needs as demonstrated by her physicians Plaintiff first left her position at the DOC because of her poor physical condition She received worker's compensation for a period, and later was accommodated in a light duty position at the DOC on the recommendation of her physician Plaintiff was unable to perform the tasks required, and then refused to accept a different position at the same rate of pay The court declines to characterize such medically required reassignments as "adverse " *See, e g, Sanchez v Henderson*, 188 F 3d 740, 745 (7th Cir 1999) (expressing "serious doubt" that employer's action in transferring employee to accommodate employee's request for light duty work could be considered adverse employment action in absence of less pay, responsibility, prestige or opportunity for advancement)

\*4 Furthermore, even if plaintiff's reassignments are considered "adverse," plaintiff does not demonstrate that similarly situated male or white employees were treated more favorably Plaintiff generally alleges that male correctional officers were not treated in the same manner as female correctional officers, but she fails to provide sufficient evidence for comparison of the treatment of similarly situated male and female employees At most, plaintiff states that the "DOC used PCQ's to upgrade males and to move around from going to the Register where qualified females were on the [R]egister" and that the "DOC has made special position[s] for other security staff to work while suffering from cancer, heart conditions, substance abuse[ ], etc " (D I 18 at ¶ 4) Neither of these allegations supports an adequate comparison between similarly situated male and female correctional officers The record also reflects no indication of disparate treatment based on race Because the court finds that plaintiff did not suffer an adverse employment action and cannot infer any discriminatory intent by the DOC, plaintiff fails to state a prima facie case of race or gender discrimination

B Hostile Work Environment Claim

To state a Title VII claim premised on a hostile

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F Supp 2d

2001 WL 935621 (D Del )

(Cite as: 2001 WL 935621 (D.Del.))

Page 5

work environment, plaintiff must show: (1) that she suffered intentional discrimination because of race or sex; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected plaintiff; (4) that the discrimination would detrimentally affect a reasonable person of the same race or sex in that position; and (5) the existence of respondeat superior liability *See Aman v Cort Furniture Rental Corp ,* 85 F 3d 1074, 1081 (3d Cir 1996)

By stating only one act of discrimination, plaintiff fails to allege that she has been detrimentally affected by a hostile work environment Plaintiff's isolated confrontation with Sgt Wright does not constitute a "pervasive and regular" atmosphere of discrimination Moreover, plaintiff's other complaints cannot be construed as discriminatory, as the record reflects that plaintiff was unable to perform the tasks of even a light duty position. Therefore, based on the record presented, the court concludes that plaintiff fails to carry her burden of proving a prima facie case on her hostile work environment claim

C Retaliation Claim

To establish a prima facie case of retaliation under Title VII, plaintiff must show: (1) that she engaged in protected activity; [FN7] (2) that defendants took adverse employment action against her; and (3) that a causal link exists between the protected activity and the adverse action *See Kachmar v. Sungard Data Sys , Inc ,* 109 F 3d 173, 177 (3d Cir 1999) "The timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred " *Krouse v Am Sterilizer Co ,* 126 F 3d 494, 503 (3d Cir 1997)

> FN7. Title VII defines a "protected activity" as an instance when an employee has "opposed any practice made an unlawful employment practice by this subchapter, or   has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter " 42 U S C §

2000e-3(a)

**\*5** Plaintiff did engage in the protected activities of participating in the class action suit filed against the DOC in 1996, and filing her first EEOC complaint However, as stated above, plaintiff did not suffer an adverse employment action when the DOC reassigned her to light duty positions on account of her medical needs Therefore, plaintiff fails to state a claim of retaliation under Title VII

V CONCLUSION

For the reasons stated, defendants' motion to dismiss is granted An appropriate order shall issue

ORDER

At Wilmington, this 3rd day of August, 2001, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that defendants' motion to dismiss plaintiff's complaint (D I 14) is granted The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff

2001 WL 935621 (D Del )

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00826 (Docket)

(Sep 11, 2000)

END OF DOCUMENT

© 2005 Thomson/West No Claim to Orig U S Govt Works



Not Reported in F Supp 2d

2004 WL 1960218 (D.Del.)

**(Cite as: 2004 WL 1960218 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court,
D. Delaware
Tas'Shea S LAFATE, Plaintiff,
v
HOSPITAL BILLING & COLLECTIONS
SERVICE, LTD , Defendant.
**No. Civ.A. 03-985 JJF.**

Sept 1, 2004

Tas'Shea S LaFate, Newark, Delaware, Plaintiff,
pro se

Jennifer C Jauffret, and Kelly A Green, of
Richards, Layton & Finger, P.A., Wilmington,
Delaware, for Defendant

*MEMORANDUM OPINION*

FARNAN, J

**\*1** Presently before the Court is the Motion To
Dismiss filed by Hospital Billing & Collections,
Service, Ltd ("HBCS") (D I 8 ) For the reasons
discussed, the Court will deny the Motion

BACKGROUND
Plaintiff initiated the instant lawsuit alleging that
HBCS wrongfully discharged her from employment
on the basis of race in violation of Title VII of the
Civil Rights Act of 1964 (D I 2 ) Plaintiff filed a
charge of discrimination with the Equal
Employment Opportunity Commission (the
"EEOC"), and the EEOC denied Plaintiff's charge
on May 7, 2003 [FN1] On October 28, 2003,
Plaintiff filed the instant lawsuit

FN1 Although Plaintiff did not attach the

EEOC's letter of dismissal and notice of
right-to-sue letter (the "notice of
right-to-sue") to the Complaint (as Plaintiff
contends it was never mailed to her), the
Court will rely upon the dates provided in
the notice of right-to-sue in the instant
motion without converting the same to a
motion for summary judgment because the
notice of right-to-sue is a "document
integral to or explicitly relied upon in the
complaint " *See In re Burlington Coat
Factory Sec Litig,* 114 F 3d 1410, 1426
(3d Cir 1997) (inner quotations omitted)

STANDARD OF REVIEW
A motion to dismiss tests the legal sufficiency of
the complaint *Conley v. Gibson,* 355 U S 41,
45-56 (1957) In reviewing a motion to dismiss
pursuant to Rule 12(b)(6), courts "must accept as
true the factual allegations in the [c]omplaint and all
reasonable inferences that can be drawn therefrom "
*Langford v City of Atlantic City,* 235 F 3d 845, 847
(3d Cir 2000) A court will grant a motion to
dismiss only when it appears that a plaintiff could
prove no set of facts that would entitle him or her to
relief *Id*

DISCUSSION
I Parties' Contentions

HBCS contends that the Court should dismiss the
Complaint because it was not filed within ninety
days of the date Plaintiff is presumed to have
received the notice of right-to-sue from the EEOC
HBCS contends that established precedent requires
the Court to presume that Plaintiff received the
notice of right-to-sue within three days of its
mailing HBCS also contends that there are no
grounds for equitable tolling in this case

Plaintiff responds that, although she lived at the
address listed on the notice of right-to-sue, she
never received it As such, Plaintiff contends that it

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F Supp 2d                                                                                                    Page 2

2004 WL 1960218 (D Del )

**(Cite as: 2004 WL 1960218 (D.Del.))**

was impossible for her to know that the ninety day limitation period had begun. Further, Plaintiff contends that she contacted the EEOC about the status of her charge of discrimination but that the EEOC was not helpful

II  Decision

Before initiating a discrimination lawsuit in federal court for a violation of Title VII, a plaintiff must file a charge of discrimination with the EEOC. If the EEOC denies or takes no action on the charge, it will notify the charging party. The charging party then has ninety days after receipt of such notice to file a lawsuit in federal court 42 U S C § 2000e-5(f)(1)  In this case, HBCS contends that the Court should apply precedent providing that a party is presumed to have received a notice of right-to-sue three days after it is mailed by the EEOC

After review of the parties' submissions and the applicable legal principles, the Court will deny HBCS's Motion. The cases relied on by HBCS for the principle that courts presume a plaintiff to have received his or her notice of right-to-sue from the EEOC do not compel dismissal at this stage of the proceedings. Unlike the plaintiffs in *Seitzinger v. Reading Hospital and Medical Ctr*, 165 F 3d 236 (3d Cir 1999), *Garrison v. Town of Bethany Beach*, 131 F Supp 2d 585 (D Del 2001), and *Arots v. Salesianum Sch, Inc*, 2003 WL 21398017 (D Del June 16, 2003), in this case, Plaintiff has not had the opportunity to rebut HBCS's assertion that she received her notice of right-to-sue from the EEOC. The courts in *Seitzinger, Garrison*, and *Arots*, granted dismissal for violating the ninety day limitation period of Section 2000e-5(f)(1) at the summary judgment stage  In this case, by contrast, HBCS moves for a Rule 12(b)(6) dismissal, and therefore, the Court must accept as true Plaintiff's allegation in the Complaint that she "never received a right-to-sue letter" from the EEOC  (D I 2 ) Accordingly, the Court cannot conclude that Plaintiff had notice from the EEOC and that she failed to file the instant lawsuit until after the limitations period had expired  See *Khazzaka v. Univ. of Scranton*, 2001 WL 1262320, at *2

(M D Pa Oct 22, 2001)

**\*2** The Court concludes that Plaintiff should be given the opportunity to provide evidence sufficient to rebut HBCS's contention that she did not comply with the statute of limitations in this case, *see Seitzinger*, 165 F 3d at 238-39 (providing that *"in the absence of other evidence*, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it") (emphasis added) (citations omitted); *Garrison*, 131 F Supp 2d at 588-89 (citing *Sherlock v. Montefiore Med Ctr*, 84 F 3d 522, 525 (2d Cir 1996)); *Arots*, 2003 WL 21398017 at *2 (stating that it is when a plaintiff *"offers no evidence in support* of th[e] bare assertion [that he or she did not receive notice, that] Rule 6(e), presuming receipt ., must be applied") (emphasis added), and therefore, the Court will deny HBCS's Motion

An appropriate Order will be entered.

*ORDER*

At Wilmington, this 1st day of September, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) The Motion To Dismiss filed by Hospital Billing & Collections, Service, Ltd (D I 8) is *DENIED*;

2) Plaintiff and counsel for Defendant shall confer and submit a proposed Rule 16 Scheduling Order, using the enclosed form of order, within fifteen (15) days from the date of this Order

2004 WL 1960218 (D Del )

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00985  (Docket)

(Oct 28, 2003)

END OF DOCUMENT

© 2005 Thomson/West  No Claim to Orig  U S  Govt  Works



Not Reported in F. Supp 2d

2001 WL 65725 (D Del )

**(Cite as: 2001 WL 65725 (D.Del.))**

Page 1

Only the Westlaw citation is currently available

United States District Court, D. Delaware
P Robert REED, Plaintiff,
v
HEWLETT-PACKARD CO Defendant
**No. Civ.A. 98-582-GMS.**

Jan 12, 2001

Gary W. Aber, Heiman, Aber & Goldlust Wilmington, DE, for Plaintiff.

Steven J. Balick, Steven T. Margolin, Ashby & Geddes, Wilmington, DE , for Defendants

*MEMORANDUM AND ORDER*

SLEET, J

**\*1** Plaintiff, P. Robert Reed ("Reed"), filed suit against his former employer, Hewlett-Packard, Inc ("Hewlett-Packard"), alleging that Hewlett-Packard violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. (1994) when it fired him. Presently before the court is Hewlett-Packard's motion to dismiss. The court will deny Hewlett-Packard's motion to dismiss because Reed timely filed his charge of discrimination within 300 days of the alleged discriminatory act.

I FACTS

Reed was employed as an executive at Hewlett-Packard. He worked there for over twenty years before he was fired on April 23, 1997 According to Reed, over this time, he consistently received excellent reviews from his superiors. In essence, Reed claims that he was fired when he would not accept a promotion to a better position out of state in order to let a minority applicant who, in Reed's opinion, was less qualified take his job.

After being fired from Hewlett-Packard, Reed presented a written Charge of Discrimination to the Philadelphia District Office of the Equal Employment Opportunity Commission ("EEOC") on or about February 11, 1998 The Charge of Discrimination ("Charge") form includes a box that must be checked if plaintiffs are also filing the Charge form with a state agency. Reed did not check this box. The Charge form provides another space to indicate whether a claimant wishes to initiate proceedings with a state agency. Reed's form also failed to indicate whether he wished to file his Charge with a state agency in this space as well.

Reed then filed this action within ninety days of receiving a Right to Sue Letter Reed claims that Hewlett-Packard engaged in employment discrimination by firing him in violation of 42 U.S.C. § 2000e et seq. and that Hewlett-Packard breached its covenant of good faith and fair dealing with him Reed seeks declarative, injunctive, and monetary relief. In its answer, Hewlett-Packard raised a number of affirmative defenses. The one most relevant to the motion before the court is whether Reed filed a charge of discrimination with the EEOC in a timely manner.

II STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted Fed.R.Civ.P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint *Rogan v. Giant Eagle, Inc.* 113 F Supp 2d 777, 780 (W.D. Pa 2000) In deciding a motion to dismiss, the court must accept as true all well-pleaded allegations of the complaint and view the complaint's averments in the light most favorable to the plaintiff. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F 3d 1250, 1261 (3d Cir 1994) A complaint may be dismissed only

© 2005 Thomson/West No Claim to Orig U.S Govt Works

Not Reported in F Supp 2d                                                    Page 2

2001 WL 65725 (D Del.)

**(Cite as: 2001 WL 65725 (D.Del.))**

where no relief could be granted under any set of facts that could be proved consistent with the allegations *Hishon v King & Spalding,* 467 U S 69, 73 (1984)

**\*2** In Title VII cases, claims are properly presented to the court only after administrative remedies have been exhausted. *See Anjelino v New York Times,* 200 F 3d 73, 87 (3d Cir 1999) In particular, if a plaintiff has not exhausted administrative remedies before bringing suit, then a Rule 12(b)(6) motion is appropriate *See Anjelino,* 200 F 3d at 87; *Robinson v Dalton,* 107 F 3d 1018, 1022 (3d Cir 1997) Thus, the statute of limitations may be the basis of a motion to dismiss, provided the complaint on its face shows noncompliance with the applicable limitations period and the affirmative defense clearly appears on the face of the pleading *Rogan v. Giant Eagle, Inc.* 113 F Supp 2d 777, 780-81 (W D Pa 2000)(citing *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F 3d 1380, 1384 n 1 (3d Cir 1994))

Before addressing the merits of Hewlett-Packard's motion, the court must determine whether any extrinsic documents may be properly considered in deciding this motion to dismiss In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record *Pension Benefit Guaranty Corp. v. White,* 998 F 2d 1192, 1196 (3d Cir 1993) If a court considers extrinsic matters outside of the pleadings, the motion must be converted to a summary judgment motion and the parties must be given notice of this conversion in order to conduct discovery *Rose v. Bartle,* 871 F 2d 331, 340 (3d Cir 1989). There is an exception to the general rule, however, which is premised on the theory that when a complaint relies on a document, the plaintiff is clearly on notice as to its contents and the need for an opportunity to refute the evidence is diminished. *Pension Benefit,* 998 F 2d at 1196-97 Here Reed's Charge of Discrimination form is both integral to his complaint and a matter of public record Because a discrimination plaintiff cannot "sustain a court claim without showing resort to the avenue of administrative relief," this court will consider the

Charge of Discrimination form filed by Reed *Arizmendi v. Lawson,* 914 F Supp 1157, 1161 (E D Pa 1996); *see also Oshiver,* 38 F 3d at 1384, n 2; *Rogan v. Giant Eagle, Inc.,* 113 F Supp 2d at 782 (considering EEOC charge and related EEOC documents)

The court now turns to the substance of Hewlett-Packard's motion to dismiss

III DISCUSSION

In this case, there is no factual dispute regarding Reed's actions in filing a charge with the Equal Employment Opportunity Commission ("EEOC") According to Reed's complaint, he was fired on April 23, 1997, and filed his Charge with the EEOC on February 11, 1998 Based on these dates, Reed filed his Charge 294 days after he was terminated. In filing the Charge, Reed did not check the box referring the Charge to the State nor did he indicate that he wanted to file the Charge with the State in another space provided for that purpose Despite Reed's failure to designate that his Charge be sent to the State, the EEOC still forwarded a copy of Reed's Charge to the state in accordance with its own procedures

**\*3** Hewlett-Packard argues that because Reed did not indicate his intent to file the Charge with the State, he only filed with the EEOC Thus, Hewlett-Packard contends that because Reed actually failed to initiate proceedings with the State within 180 days of his termination, he should not receive the benefit of the 300 day filing period

In contrast, Reed argues that based on his residence in a deferral state, he is either automatically entitled to the 300 day deadline, or that by filing a Charge with the EEOC, he automatically filed a Charge with the State as well. In the alternative, Reed argues that if he is not entitled to the 300 day deadline, his claim should be equitably tolled because he did not actually know he was discriminated against until after his termination The court will first address whether Reed is entitled to the 300 day deadline [FN1]

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F. Supp. 2d                                                      Page 3

2001 WL 65725 (D. Del.)

**(Cite as: 2001 WL 65725 (D.Del.))**

FN1. Reed also contends that, as a layperson, he should not be penalized by Title VII's complex procedural requirements. The court is aware of the intricacies of Title VII litigation. *See Davis v. Calgon Corp.,* 627 F.2d 674, 676 (3d Cir.1980) (describing Title VII as a "statutory scheme in which laymen, unassisted by trained lawyers, initiate the process") Although Reed's argument is not without merit, the court must also consider the purpose of Title VII filing deadlines. The "statutory period is designed to protect individuals' civil rights and at the same time ensure employers will not be burdened by defending claims arising from employment actions that occurred in the distant past." *Parker v. State of Delaware Dept. Of Pub. Safety,* 11 F.Supp.2d 467, 472-73 (D.Del.1998) (citations omitted). After considering the purpose of the statute and the facts of this case, the court concludes that Reed's status as a lay person is, by itself, an insufficient basis upon which to find that he is entitled to the benefit of the 300 day filing period. The conclusion that Reed's lay status alone does not dictate a different result is further supported by the Supreme Court's observation in *Mohasco Corporation v. Silver,* 447 U.S. 807, 825 (1980), that "[w]e believe that a lay person would be more apt to regard the general obligation of filing within 180 days as the standard of diligence he must satisfy, and that one who carefully read the entire section would understand it to mean exactly what it says."

A. Appropriate Filing Deadline

As a general matter, a claim of employment discrimination under Title VII must be filed with the EEOC within 180 days of the last alleged discriminatory act. 42 U.S.C. § 2000e-5(e) (1994) There is, however, an exception to this 180 day filing period. If the charging party "initially instituted proceedings with a State or local agency" the party will be entitled to a 300 day filing period

*Id.* [FN2]

FN2. 42 U.S.C. § 2000e-5(e) states, in pertinent part: "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)

Title VII provides a deferral period that provides authorized state or local agencies time to remedy the alleged violations 42 U.S.C. § 2000e-5(c) (1994). Specifically, no charge may be filed with the EEOC until 60 days after the initial filing with an authorized state or local agency. Thus, a charge must be filed with, or referred by the EEOC to, an authorized state or local agency within 240 days of the last alleged discriminatory act. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 814, n. 16 (1980); *see also EEOC v. Commercial Office Products Co.,* 486 U.S. 107, 111 (1988). In addition, even if the charging party fails to file within 240 days, the party's charge may still be timely filed if the state or local agency terminates its proceedings before 300 days. *Id.* at 111-12.

In this case, it is not disputed that Delaware is a deferral state that is authorized to remedy violations under Title VII. *See Berry v. E.I. Dupont de Nemours & Co.,* 625 F.Supp. 1364, 1374 (D.Del.1985). A deferral state is a state or subdivision "which has a State or local law prohibiting the practice alleged and establishing or authorizing the state or local authority to grant or seek relief" from practices prohibited under Title VII. *Serendinski v. Clifton Precision Products, Co.,* 776 F.2d 56, 61 (3d Cir.1985.) (quoting 42 U.S.C. §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 4

2001 WL 65725 (D.Del.)

**(Cite as: 2001 WL 65725 (D.Del.))**

2000e-5(d)) In Delaware, the state agency authorized to receive and adjudicate charges of discrimination under Title VII is the Delaware Department of Labor (DDOL). *See* 29 C.F.R. § 1601.74. Under a Worksharing Agreement between the DDOL and the EEOC, the DDOL has waived its right of exclusive jurisdiction for charges originally received by the EEOC. *See* 29 C.F.R. § 1601.13(a)(3)(iii). [FN3]

> FN3. 29 C.F.R. § 1601.13 reads in pertinent part: "Where the document on its face constitutes a charge within a category of charges over which the FEP agency has waived its rights to the period of exclusive processing, ... the charge is deemed to be filed with the Commission upon receipt of the document. Such filing is timely if the charge is received within 300 days from the date of the alleged violation." 29 C.F.R. § 1601.13(a)(4)(ii)(A).

**\*4** In this case, the parties do not dispute these general guidelines for filing discrimination charges. Here, the parties disagree as to whether Reed is entitled to the 300 day filing period where he did not initiate proceedings with the DDOL, and the DDOL did not expressly terminate its jurisdiction over Reed's claim. The plaintiff maintains that under the worksharing agreement, the DDOL has appointed the EEOC as its agent for the filing of complaints, and under that same agreement, the DDOL has waived its initial jurisdiction. Hewlett-Packard maintains, however, that the waiver under the worksharing agreement does not automatically entitle Reed to the longer filing period. The defendant asserts this position in the face of clear Third Circuit case law that seems to compel the court to apply the 300 day filing period.

In a *per curiam* decision, the Third Circuit adopted a blanket 300-day rule, stating that a "plaintiff in a deferral state is entitled to the extended period [300 days] regardless of whether he has filed a state administrative complaint with 180 days after the alleged discrimination occurred." *Davis v. Calgon Corp.*, 627 F.2d 674, 677 (3d Cir.1980) (citing *Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 757-59

(9th Cir.1979)). [FN4] Although the plaintiff in *Davis* filed his complaint under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (1994), the appellate court looked to the Supreme Court's decision in a Title VII case, *Mohasco*, 447 U.S. at 814, for guidance. *See Davis*, 627 F.2d at 677. [FN5]

> FN4. The First Circuit also applied a blanket 300 day filing deadline in light of *Mohasco* stating that "Mohasco strongly suggests, if it does not compel," that the "300-day filing period is to be allowed regardless of a claimant's failure to seek a state administrative remedy within 180 days." *Ciccone v. Textron, Inc.*, 651 F.2d 1 (1st Cir.1981) (citing *Davis v. Calgon Corp.*, 627 F.2d 674 (3d Cir.1980).

> FN5. Although Hewlett-Packard attempts to argue that ADEA cases like *Davis* are inapposite to the present case, the court is not persuaded by this argument. In *Oshiver v. Levin, Fishbein, Sedran & Berman* the court noted that "[w]hile *Davis* was brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), Title VII and the ADEA have been given parallel constructions due to their similarities in purpose and structure." 38 F.3d 1380,\*1385 n. 4 (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979) and *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 752 n. 3 & n. 4 (3d Cir.1983)). *See also EEOC v. Commercial Products Co.*, 486 U.S. at 123 ("filing provisions of the ADEA and Title VII are 'virtually in haec verba'); *Ricks v. Delaware State College*, 605 F.2d 710, 712 (3d Cir.1979).

In 1991, the Third Circuit affirmed the *Davis* decision in *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1414 (3d Cir.1991). "Thus, we adhere to our holding in *Davis v. Calgon Corp.* ... in which an ADEA case we held that 'a plaintiff in a deferral state ... is entitled to the extended period [of 300 days] ... regardless of whether he has filed a state

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 65725 (D. Del.)

**(Cite as: 2001 WL 65725 (D.Del.))**

administrative complaint within 180 days after the alleged discrimination occurred." *Id.* *Colgan* also expressly overruled *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 752 (3d Cir. 1983), which held that the 300-day limitations period is available to a litigant in a deferral state only when the EEOC or the litigant has instituted state or local proceedings. *See* 935 F.2d at 1414. The court overruled *Kocian* because that case had been decided prior to the adoption of 29 C.F.R. § 1601.13(a)(4), which provides for deferral of an EEOC complaint to an authorized state agency. *Id.* at 1415.

The Supreme Court has also addressed this issue in *E.E.O.C. v. Commercial Products Co.*, 486 U.S. 107 (1988). Specifically, the issue before the Court was whether "a state agency's waiver of the 60-day deferral period, pursuant to a worksharing agreement with the EEOC, constitutes a 'termination' of its proceedings so as to permit the EEOC to deem a charge filed and to begin to process it immediately." 486 U.S. at 112. The Court held that a waiver pursuant to a worksharing agreement does terminate proceedings and thus, the EEOC can deem the charge filed. *Id.* at 125.

**\*5** Although Hewlett-Packard attempts to distinguish the present case from *E.E.O.C.* by pointing out factual distinctions between the cases, the defendant's argument is not persuasive. The *E.E.O.C.* Court expressly stated that it was guided by the purpose and legislative history of Title VII in holding that when a deferral state waives its right to exclusive jurisdiction under a worksharing agreement, the waiver constitutes a termination of state proceedings and the 300 day filing period applies. *Id.* at 116-121 (discussing the legislative history and purpose of the deferral provisions of Title VII). In fact the Court states that not applying the 300 day filing period to claims like Reed's, that is claims filed more than 240 days but less than 300 days in worksharing states, would lead to "absurd or futile results ... 'plainly at variance with the policy of the legislation as a whole.'" *Id.* (citations omitted).

IV. CONCLUSION

After having carefully considered the submitted materials, the appropriate principles of law, and the contentions of the parties, the court will deny Hewlett-Packard's motion to dismiss because Reed is entitled to the 300 day filing period under Third Circuit and Supreme Court precedent. Because the court rules that Reed is entitled to the longer filing period, it will not address Reed's equitable tolling argument.

For these reasons, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss is DENIED.

2001 WL 65725 (D. Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F Supp 2d

2001 WL 34368392 (D.Del )

**(Cite as: 2001 WL 34368392 (D.Del.))**

Only the Westlaw citation is currently available

United States District Court,
D. Delaware
Tony A. WILSON, Plaintiff,
v.
DEPARTMENT OF CORRECTION OF
DELAWARE, Alan Machtinger, Joe Paesani,
Michael
McFarland, Ron Turner, Thomas G. Bailor, James
Supiett, Mr Keen, Forest
Jacobs, Mr Kuminski, Dave Stebbins, Pinkerton,
Inc , Unidentified, Defendants.
**No. Civ.A. 99-614-JJF.**

March 30, 2001
Tony A. Wilson, Ocala, Florida, Plaintiff, pro se

Stuart B. Drowos, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Defendants

*MEMORANDUM OPINION*

FARNAN, J

**\*1** Presently before the Court is a Motion to
Dismiss filed by Defendants Department of
Corrections, Alan Machtinger, Joseph Paesani,
Michael McFarland and Ron Turner (collectively
"State Defendants") (D I 32) Plaintiff Tony A
Wilson filed the instant action alleging violations of
Title VII of the Civil Rights Act of 1964 and
Fourteenth Amendment Due Process violations
under 42 U.S.C. § 1983. State Defendants seek
dismissal pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure for failure to state a claim
upon which relief can be granted For the reasons
set forth below, State Defendants' Motion to
Dismiss (D I 32) will be granted.

BACKGROUND

Plaintiff applied for, and was offered, a position
with the Delaware Department of Corrections
("DOC") as a Probation and Parole Officer on
January 15, 1996. (Complaint, D I 3, App 1)
Plaintiff's offer was conditional and required him to
file a Personal History Statement ("PHS") with the
Department of Corrections *Id* All DOC offers of
employment are contingent upon favorable
background investigations This paperwork was
completed and returned to Defendants on February
2, 1996 *Id* As a result of the background
investigation, Defendant McFarland made a
recommendation to rescind Plaintiff's offer of
employment *Id* On March 12, 1996, Plaintiff
received a letter from State Defendants stating that
his offer of employment had been rescinded. *Id*
Plaintiff alleges that the background investigation
information was untrue and that State Defendants
rescinded the employment offer solely because of
Plaintiff's race Plaintiff is a black male

On March 2, 1998, Plaintiff filed charges with the
Delaware Department of Labor and the Equal
Employment Opportunity Commission ("EEOC").
*Id* The EEOC investigator was unable to conclude
that the information obtained established a violation
and notified Plaintiff that his file would be closed
on May 26, 1998 *Id* Plaintiff filed this case against
State Defendants on July 7, 1998, within the ninety
day time frame set forth in the EEOC dismissal
notification *Id*

By his Complaint, Plaintiff alleges that State
Defendants' "rescinding of the Probation and Parole
employment offer and Defendants' general hiring
practices are racially motivated and designed" in
violation of Title VII of the Civil Rights Act of
1964 (D I 3, at 1). Plaintiff further asserts a
Section 1983 claim alleging violations of his
Fourteenth Amendment Due Process rights

STANDARD OF REVIEW
Pursuant to Rule 12(b)(6), the Court may dismiss a

© 2005 Thomson/West No Claim to Orig U S Govt Works

Page 1

Not Reported in F Supp 2d

2001 WL 34368392 (D Del )

**(Cite as: 2001 WL 34368392 (D.Del.))**

Page 2

complaint for failure to state a claim upon which relief may be granted Fed R Civ P 12(b)(6) The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case *See Kost v. Kozakiewicz*, 1 F 3d 176, 183 (3d Cir 1993) Thus, when considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff *See Neitzke v. Williams*, 490 U S 319, 326 (1989); *Piecknick v Pennsylvania*, 36 F 3d 1250, 1255 (3d Cir 1994) However, the court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts " *Kost*, 1 F 3d at 183 (citation omitted) Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief " *Conley v Gibson*, 355 U S 41, 45 (1957)

DISCUSSION

I Plaintiff's Claim Under Title VII [FN1]

> FN1 As a preliminary matter, the Court notes that Defendants Department of Corrections, Paesani, McFarland and Turner were not officially served pursuant to Federal Rule of Civil Procedure 4(m) Rule 4(m) provides that "if service of summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice " Fed R Civ P 4(m) To date, Plaintiff has neither served these four State Defendants nor requested additional time for service from the Court While acknowledging that Rule 4(m) is dispositive with regard to these four State Defendants, the Court will nevertheless address the issues raised by the motion to dismiss with regard to all State Defendants

**\*2** Racial discrimination claims under Title VII of the Civil Rights Act of 1964 are analyzed under the burden-shifting framework set forth in *McDonnell*

*Douglas v Green*, 411 U S 792, 802 (1973) In order to survive a motion to dismiss, Plaintiff must allege sufficient facts to establish a prima facie case of discrimination by showing: (1) that Plaintiff is a member of a protected class; (2) that Plaintiff was qualified for a job for which the employer was seeking applicants and that, despite his qualifications, he was rejected; and (3) that non-members of the protected class were treated more favorably *See Ezold v Wolf, Block, Schorr and Solis-Cohen*, 983 F 2d 509, 522 (3d Cir 1992); *McCay v Delaware State Univ*, Civ A No 99-219-SLR, 2000 U S Dist LEXIS 14653 (D Del Sept 29, 2000)

As an initial matter, the Court notes that Plaintiff's Title VII claim, although asserted against State Defendants Machtinger, McFarland, Turner and Paesani in their official and individual capacities, is only relevant to Plaintiff's claims against the Department of Corrections Title VII does not allow for suits against individuals Title VII only allows for suits against employers based on unlawful employment practices 42 U S C § 2000e-2 (1999)

Upon reviewing the Complaint, the Court concludes that Plaintiff fails to allege any facts to demonstrate that non-members of the protected class were treated more favorably in the present situation Accordingly, the Court concludes that Plaintiff has failed to establish a prima facie case for employment discrimination under Title VII Thus, State Defendants' motion to dismiss Plaintiff's Title VII claim will be granted

II Plaintiff's Claim Under 42 U S C § 1983

Plaintiff also alleges that State Defendants violated his Fourteenth Amendment Due Process rights by failing to provide him with the opportunity to rebut information discovered as a result of a background check Procedural due process rights apply when a plaintiff has been deprived of a property interest as defined by state law Property interests are defined by state law, not by the Constitution *See Board of Regents v. Roth*, 408 U S 564, 576 (1972)

Under Delaware law, all newly hired DOC

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F Supp 2d

2001 WL 34368392 (D Del )

**(Cite as: 2001 WL 34368392 (D.Del.))**

Page 3

personnel serve a six month probationary period
*See* 11 Del C § 6506(b). The Court of Appeals for
the Third Circuit has held that an officer does not
have a property interest in their position during the
probationary period. *See Blanding v. Pennsylvania
State Police,* 12 F 3d 1303, 1307 (3d Cir 1993) In
this case, Plaintiff was not even on probation
because he was never hired by the Department of
Corrections

Moreover, Plaintiff signed a "Conditions of
Employment" form, whereby Plaintiff
acknowledged that his selection as a Probation and
Parole Officer was tentative (D I 3 at 30) In order
to make the tentative offer permanent, Plaintiff had
to successfully and favorably complete a series of
conditions *Id.* Because Plaintiff's employment offer
was tentative and conditional, the Court concludes
that Plaintiff did not have a protected property
interest in his conditional "offer" of employment
and, as such, fails to state a claim for a Fourteenth
Amendment Due Process violation in order to
sustain his Section 1983 claim Thus, State
Defendants' motion to dismiss Plaintiff's Section
1983 claim will be granted

III Plaintiff's State Law Claims

**\*3** Plaintiff has asserted a defamation claim against
State Defendants When a court dismisses a
plaintiff's federal claims which form the basis of
jurisdiction under 28 U S C § 1343, the Court loses
subject matter jurisdiction over any state law
claims *See United Mine Workers v. Gibbs,* 383
U S 715, 726 (1965) State law claims should be
dismissed if the federal claims are dismissed before
trial *Id* The Court has dismissed Plaintiffs federal
claims asserted against all State Defendants under
Title VII and Section 1983 Because the federal
claims will be dismissed, the Court has no subject
matter jurisdiction over Plaintiff's state law
defamation claims Accordingly, State Defendants'
motion to dismiss Plaintiff's defamation claims will
be granted

CONCLUSION
For the reasons discussed, State Defendants'
Motion to Dismiss (D I 32) will be granted

An appropriate Order will be entered

2001 WL 34368392 (D Del )

END OF DOCUMENT

© 2005 Thomson/West No Claim to Orig U S Govt Works

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2005, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

## VIA HAND DELIVERY

Sean Patrick McDevitt
Pepper Hamilton LLP
1313 Market Street
Suite 5100
P O Box 1709
Wilmington, DE 19899-1709

John H Newcomer, Jr
Duane Morris LLP
1100 North Market Street
Suite 1200
Wilmington, DE 19801

Neal J Levitsky
Fox Rothschild LLP
919 North Market Street
Suite 1300
P O Box 2323
Wilmington, DE 19899-2323

Sheldon Kevin Rennie
Fox Rothschild LLP
919 North Market Street
Suite 1300
P O Box 2323
Wilmington, DE 19899-2323

I hereby certify that on June 30, 2005, I have sent by Hand Delivery and First Class U S Mail the document(s) to the following plaintiff non-registered participant:

Ashley T Adams
716 N Barrett Lane
Christiana, DE 19702

Alyssa M Schwartz (#4351)
schwartz@rlf com